UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                 :

EDGARDO MALDONADO,            :

                           :

                Plaintiff,     :

                           :

           -v-                   :

                           :

THE CITY OF NEW YORK; New York City   :
Police Department ("NYPD") Detective     :
("DET.") RICHARD ALVAREZ (Shield No.  :
01415), Officer ("P.O.") GUILLERMO GIL   :
(Shield No. 00719), P.O. JOSE SANDOBAL   :
(Shield No. 02208), DET. JOHNPAUL      :
SLATER (Shield No. 06994), Sergeant      :
("SGT.") MARK SILEY (Shield No. 03441);  :
New York City Department of Correction    :
("NYDOC") Captain ("CPT.") RICHARD     :
ROE, and Corrections Officer ("C.O.") JOHN  :
DOE, (the  names Richard Roe and John Doe  :
being fictitious, as the true names are not     :
presently known), in their individual and     :
official capacities,                     :

                           :

                Defendants.  :

                           :
-----------------------------------------------------------X

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2/26/14

No. 11 Civ. 3514 (RA)

OPINION AND ORDER

RONNIE ABRAMS, United States District Judge:

       Plaintiff Edgardo Maldonado brings this action pursuant to 42 U.S.C. § 1983 and New York law alleging that Defendants the City of New York and Detective Richard Alvarez violated Maldonado's civil rights during his arrest and subsequent prosecution for criminal sale of a controlled substance and related charges.  Specifically, Maldonado alleges that he was deprived of his federal civil rights under the First, Fourth, and Fourteenth Amendment and rights under the New York Constitution due to (1) his false arrest and imprisonment, (2) the lodging of false charges against him, (3) the fabrication of evidence, (4) malicious prosecution, and (5) the

1

deprivation of liberty without due process.  He also alleges negligence and negligent hiring, screening, retention, supervision, and training.  Finally, Maldonado charges the City with respondeat superior liability for Alvarez's violations of state law.[1]  Defendants now move for summary judgment as to all of Maldonado's claims.  For the reasons that follow, the Court grants Defendants' motion with respect to all claims, with the exception of Maldonado's claim for the fabrication of evidence.

## BACKGROUND

### A.  Maldonado's Actions and Arrest

Maldonado was arrested on November 9, 2009.  (Pl. 56.1 Response ¶¶ 12, 37.)[2]  The three individuals who were present for the arrest and deposed in this litigation provide divergent accounts of the pertinent facts.

At his deposition, Maldonado testified that, on the day of his arrest, he intended to purchase four bags of heroin from Yvette Gonzalez for his personal use.  (Maldonado Dep. 12:6-13:1, 30:20-23, 32:11-13.)  Gonzalez had a baby carriage with her and was accompanied by her husband.  (Id. at 129:22, 134:12.)  According to Maldonado, he handed Gonzalez $40 as a marked police van was coming down the street toward them.  (Id. at 133:5-13.)  Gonzalez then became nervous and "started giving off . . . like a radar."  (Id. at 133:18-22.)  Maldonado

---

[1] By way of stipulation, all claims alleging that various individual defendants failed to train, screen, supervise, or discipline their subordinates or failed to intervene to prevent their subordinates' illegal actions have been dismissed.  (Stipulation and Order of Partial Dismissal, Dkt. 41.)  The only individual defendant thus remaining in this action is Detective Alvarez.  In addition, in response to Defendants' motion, Maldonado has withdrawn claims based on Fourth Amendment excessive force, abuse of process, state-law unlawful imprisonment, assault and battery, intentional infliction of emotional distress, and negligent infliction of emotional distress. (Rankin Decl. ¶ 3.)

[2] Citations to "Pl. 56.1 Response" refer to "Defendants' Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 and Plaintiff's Response" (Dkt. 48).  Where this document is cited, Maldonado does not dispute the fact asserted or has offered no admissible evidence to refute the fact.

"retreated" and "moved away from [Gonzalez], and then when [the police van] went by, [he] approached her again." (Id. at 136:16-18.) As Maldonado reached for the four bags of heroin, which Gonzalez had retrieved from her baby carriage, Gonzalez's husband yelled out, "Be careful." (Id. at 133:22-23, 134:12-13, 135:20-24.) A police officer exited another van, grabbed Maldonado, and put him against a wall. (Id. at 133:24-34:1.) The police then took the bags of heroin from Gonzalez's hands. (Id. at 134:2.) Maldonado testified that he never received the heroin. (Id. at 30:24-25, 135:25-36:1.)

Detective Alvarez's testimony provides a different version of events from Maldonado's. He testified that while he was riding in a police van with another detective, his team was told to stop "a female pushing a baby carrier who had just been involved in a narcotics transaction." (Alvarez Dep. 48:4-13, 51:3-8.) One of the two detectives saw Gonzalez, her husband, and Maldonado when they were approximately eight feet away. (Id. at 51:24-52:11, 53:3-54:13.) The van stopped next to a parked car. (Id. at 57:9-58:23.) Alvarez claims that he saw Maldonado place glassines of heroin, each approximately the size of a thumbnail or an exhibit tab, on top of Gonzalez's baby carriage. (Id. at 59:25-60:18.) Maldonado was eight feet away from Alvarez at the time. (Id. at 61:25-62:8.) Alvarez testified that he could see the glassines in Maldonado's closed hand, but he did not know precisely how Maldonado was holding them. (Id. at 62:18-64:7.) Immediately after Maldonado placed the glassines on her baby carriage, Gonzalez picked them up and put them in a pouch. (Id. at 66:20-68:17.) Alvarez then exited his vehicle and seized the pouch. (Id. at 68:16-17, 70:15-22.) Maldonado and Gonzalez were arrested. (Id. at 75:20-76:10.)

At her deposition, Gonzalez testified that Maldonado handed her two bundles containing twenty glassines of heroin, then asked her to return four glassines for another customer.

(Gonzalez Dep. 20:22-25, 22:8-10.)  After she gave him four glassines, police officers jumped

out of a nearby vehicle, causing Maldonado to throw the glassines on top of Gonzalez's baby

carriage.  (Id. at 20:25-21:3.)  According to Gonzalez, the police officers saw the glassines and

arrested Maldonado.  (Id. at 21:3-4.)

### B.  The Prosecution

Maldonado was arrested on charges of (1) criminal sale of a controlled substance in the

third degree, (2) criminal possession of a controlled substance in the third degree, and (3)

criminal sale of a controlled substance in or near school grounds.  (Pl. 56.1 Response ¶ 37.)

Alvarez recovered two bundles, or twenty glassines, of heroin.  (Id. ¶ 28.)  He informed the

assigned arresting officer at the scene of the arrest, Detective Gil, that Maldonado had given a

glassine of heroin to Gonzalez.  (Alvarez Dep. 82:9-83:14.)

Although Gil does not recall the conversation, he believes that he "probably" spoke with

Alvarez again at the police station about Maldonado's conduct.  (Gil Dep. 115:8-14.)  Later that

night, Gil told the assistant district attorney what Alvarez had told him about Maldonado.  (Id.

118:14-19:4.)  The assistant district attorney then drafted the criminal court complaint, and Gil

signed the criminal court affidavit.  (Pl. 56.1 Response ¶¶ 63-64.)

Maldonado was arraigned on November 10, 2009.  (Id. ¶ 67.)  Three days later, he was

indicted by a grand jury on charges of (1) criminal sale of a controlled substance in the third

degree, (2) criminal possession of a controlled substance in the third degree, and (3) endangering

the welfare of a child.  (Id. ¶ 73.)  Although evidence of the government's presentation to the

grand jury is scant, it appears that Gonzalez testified in the grand jury that she received heroin

from Maldonado.  (Id. ¶ 72.)[3]  Alvarez also testified in the grand jury.  (Alvarez Dep. 95:12-21.)

Maldonado was arraigned on the indictment on December 8, 2009.  (Pl. 56.1 Response ¶ 74.)

Gonzalez pled guilty to the charge of criminal sale of a controlled substance on May 18,

2010.  (Id. ¶ 76.)  At her plea allocution, she stated under oath that she and Maldonado had sold

heroin on November 9, 2009.  (Id. ¶ 77.)  Maldonado's trial began on or about October 20, 2010.

(Id. ¶ 84.)  On October 26, 2010, he was acquitted of all charges related to the November 9, 2009

arrest.  (Id. ¶ 85.)

Maldonado was nevertheless returned to Rikers Island.  (Id. ¶ 86.)  According to

Maldonado, he was told that a warrant had been issued for him in Georgia.  (Maldonado Dep.

158-70.)  He was released when corrections officers realized that a different individual was the

subject of the Georgia fugitive warrant.  (Id. at 173:22-74:7.)  The complaint alleges that he was

released at approximately 1:00 a.m. on October 29, 2010, although Department of Corrections

records reflect that Maldonado was released from custody the day after his acquittal, on October

27, 2010.  (Pl. 56.1 Response ¶¶  90, 95.)  Regardless of the precise date of Maldonado's release,

there is no dispute that he had been in jail since the date he was arrested—a period of at least 353

days.  (Def. Ex. Q at NYC 000802.)  He filed the present action seven months after his release,

on May 23, 2011.  (Compl., Dkt. 1.)

## STANDARD OF REVIEW

Summary judgment is warranted "if the movant shows that there is no genuine dispute as

---

[3] Maldonado's assertion that there is no information concerning Gonzalez's testimony is
incorrect.  In support of his request to sever Maldonado and Gonzalez's criminal trials,
Maldonado's criminal defense attorney affirmed "on information and belief" that Gonzalez
"stated that she had purchased drugs from Edgardo Maldonado."  (Def. Ex. L at P0025.)  The
assistant district attorney's affirmation in response confirmed that this was the case (Def. Ex. M
at P0016), and the state-court judge, who inspected the grand jury minutes, referred to
"[Gonzalez's] testimony in the grand jury where she states that she received heroin from
[Maldonado]" in his decision on the motion (Def. Ex. N at P0039-40).

to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute over a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.  If it is not, there is plainly "no issue for trial." Id. at 249.

"Where, as here, the non-moving party would bear the burden of persuasion at trial, the moving party must first make a prima facie case by either identifying the portions of the record 'which it believes demonstrate the absence of a genuine issue of material fact' or 'pointing out . . . that there is an absence of evidence to support the nonmoving party's case.'" Golden Pac. Bancorp v. F.D.I.C., 375 F.3d 196, 200 (2d Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 325 (1986)).  "After such a prima facie showing, the non-moving party must respond with 'specific facts showing that there is a genuine issue for trial.'" Id. (quoting Fed. R. Civ. P. 56(e)).

However, "the failure to oppose a motion for summary judgment alone does not justify the granting of summary judgment." Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).  The Court "must still assess whether the moving party has fulfilled its burden of demonstrating that there is no genuine issue of material fact and its entitlement to judgment as a matter of law." Id.  In addition, the Court must "constru[e] the evidence in the light most favorable to the nonmoving party and draw[] all reasonable inferences in its favor." Sledge v. Kooi, 564 F.3d 105, 108 (2d Cir. 2009).

**DISCUSSION**

**A.  False Arrest and False Imprisonment**

Maldonado brings claims for false arrest and false imprisonment under § 1983.

Defendants are entitled to summary judgment on these claims because there was probable cause

for Maldonado's arrest.

Although Maldonado's § 1983 claims "derive[] from his Fourth Amendment right to

remain free from unreasonable seizures," the Second Circuit "generally look[s] to the law of the

state in which the arrest occurred."  Jaegly v. Couch, 439 F.3d 149, 151 (2d Cir. 2006) (internal

quotation marks omitted).  The elements for "false arrest and false imprisonment are one and the

same" under New York common law.  Hershey v. Goldstein, 938 F. Supp. 2d 491, 515

(S.D.N.Y. 2013); see also Holland v. City of Poughkeepsie, 90 A.D.3d 841, 844-45, 935

N.Y.S.2d 583 (2d Dep't 2011).  To prevail on these claims, Maldonado would have to establish

that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the

confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was

not otherwise privileged."  Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994).

"The existence of probable cause to arrest constitutes justification and 'is a complete

defense to an action for false arrest,' whether that action is brought under state law or under §

1983."  Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (citation omitted).  "[P]robable cause

to arrest exists when the officers have knowledge or reasonably trustworthy information of facts

and circumstances that are sufficient to warrant a person of reasonable caution in the belief that

the person to be arrested has committed or is committing a crime."  Id.  "[I]f there is no dispute

as to the pertinent events and the knowledge of the officers," the existence of probable cause

may be determined as a matter of law.  Id.

The arrest is valid "so long as the arrest itself was supported by probable cause, regardless of whether probable cause supported any individual charge identified by the arresting officer at the time of arrest." Jaegly, 439 F.3d at 153 n.1, 154 (following Devenpeck v. Alford, 543 U.S. 146 (2004)). Thus, although Maldonado was arrested on three specific charges, Defendants need only show that there was probable cause to arrest him for any crime. Defendants argue that, even according to Maldonado's account of events, Alvarez had probable cause to arrest him for attempted criminal possession of a controlled substance. "A person is guilty of criminal possession of a controlled substance in the seventh degree when he or she knowingly and unlawfully possesses a controlled substance . . . ." N.Y. Penal Law § 220.03. "A person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime." Id. § 110.00.

Maldonado concedes that his conduct on the day of his arrest satisfies the elements of attempted possession. In particular, he does not dispute that he intended to buy four glassines of heroin from Gonzalez and handed her $40 while the police were in the vicinity. (Pl. 56.1 Response ¶¶ 41, 49, 51-52.) He nonetheless argues, however, that "[i]ssues of fact are present as to whether the defendant police officers had an objective belief of probable cause for any crime." (Pl. Opp'n 7.) The Court disagrees.

Whichever of the three versions of events presented to the Court one may credit, there is no genuine dispute as to whether the police had probable cause to believe that Maldonado had committed a crime. Alvarez testified that he saw Maldonado place glassines of heroin on Gonzalez's baby carriage, who then picked them up, thereby establishing probable cause to arrest Maldonado for the possession and sale of narcotics. (Alvarez Dep. 59:25-60:18, 66:23-

67:2.)[4]  Gonzalez's account also established probable cause to arrest:  Gonzalez testified that

after she gave Maldonado four glassines of heroin, police officers jumped out of a nearby

vehicle, causing Maldonado to throw the glassines on top of Gonzalez's baby carriage.  "[T]he

cops s[aw] when he did [this]," she testified, "so . . . they arrested him."  (Gonzalez Dep. 20:25-

21:4.)

Even according to Maldonado's own account, there was probable cause to arrest him.

Maldonado testified that in an attempt to purchase heroin from Gonzalez, he handed her $40 as a

police van was coming down the street toward them.  (Maldonado Dep. 12:6-13:1, 30:20-23,

32:11-13, 133:5-13.)  He does not dispute that Alvarez's van was parked approximately eight

feet away at that time, or that Alvarez could see him and Gonzalez together at that time.  (Pl.

56.1 Response ¶¶ 17-21.)   He further acknowledges that as Gonzalez retrieved glassines of

heroin from her baby carriage, and as Maldonado reached for that heroin, Gonzalez's husband

"yelled out, 'Be careful.'"  (Maldonado Dep. 133:22-23, 134:12-13, 135:20-24.)  A police officer

then grabbed Maldonado and put him against a wall.  (Id. at 133:24-34:1.)

There is further no dispute that shortly before this transaction, "Alvarez received a radio

transmission from a member of his narcotics team indicating that a female Hispanic, pushing a

baby stroller was walking northbound on Lenox Avenue."  (Pl. 56.1 Response ¶ 15.)  Alvarez

testified at his deposition that this member of his narcotics team, Detective Sandobal,

"communicated that he saw a drug transaction . . . . [w]ith this Hispanic female."  (Alvarez Dep.

50:12-15.)  Although Alvarez did not witness the transaction that Sandobal reported, he could

properly rely on what he learned from Sandobal.  See Loria v. Gorman, 306 F.3d 1271, 1290 (2d

---

[4] Maldonado claims that Alvarez could not have seen small glassines of heroin in Maldonado's closed fist from inside his van eight feet away.  Alvarez claims, however, that he saw Maldonado place the glassines on top of the baby carriage.

Cir. 2002) (noting that "officers are entitled to rely on the statements of other officers in determining whether probable cause is present"); Bernard v. United States, 25 F.3d 98, 103 (2d Cir. 1994). Maldonado does not dispute that Alvarez came across a woman fitting the description of the Hispanic woman pushing a baby stroller within minutes of receiving the radio transmission, that this woman was later identified as Gonzalez, or that Gonzalez was interacting with Maldonado when Alvarez observed her. (Pl. 56.1 Response ¶¶ 16-17, 19-20.)

These facts are at least sufficient to establish probable cause that Maldonado attempted to possess narcotics, and Maldonado's arguments to the contrary are unavailing. Although he claims that he "never received narcotics from Ms. Gonzalez" and that "no officer could have observed anything more than him handing Ms. Gonzalez currency and her reaching down into her stroller," (Pl. Opp'n 7-8), he neglects to mention the fact that, according to his own version of events, Gonzalez successfully retrieved the glassines of heroin from her baby carriage, and that he reached for the glassines moments before they were arrested. (Maldonado Dep. 133:22-23, 134:12-13, 135:20-24.) In addition, as Maldonado was reaching for the glassines, Gonzalez's husband "yelled" at Gonzalez and Maldonado to be careful. (Id. at 133:22-23.) Any officer eight feet away, as Alvarez was, (Pl. 56.1 Response ¶¶ 17-21), who had received information about a woman fitting Gonzalez's description selling narcotics shortly before, would have seen and heard enough to reasonably believe that Maldonado was at least attempting to buy a controlled substance. In any event, there is no evidence in the record to the contrary.

In light of this information, Alvarez had probable cause to arrest Maldonado for attempting to purchase narcotics from Gonzalez, if not attempting to sell them. Maldonado's false arrest claim thus fails on the merits.

### B.  Malicious Prosecution

Maldonado next brings malicious prosecution claims under both § 1983 and New York law.[5]  He alleges that he attempted only to buy heroin from Gonzalez and that Alvarez fabricated his account of the arrest, maliciously causing Maldonado to be prosecuted on the more serious charge of criminal sale of a controlled substance.  The Court disagrees, finds that Maldonado's prosecution was supported by probable cause, and therefore grants summary judgment in favor of Defendants.

"To establish a malicious prosecution claim under New York law, a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions."  Manganiello v. City of New York, 612 F.3d 149, 161 (2d Cir. 2010) (internal quotation marks omitted).  "In order to allege a cause of action for malicious prosecution under § 1983, [a plaintiff] must assert, in addition to the elements of malicious prosecution under state law, that there was (5) a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights."  Rohman v. New York City Transit Auth., 215 F.3d 208, 215 (2d Cir. 2000).  It is undisputed that

---

[5] The parties dispute whether Maldonado conceded his federal claim for malicious prosecution. In an order denying Maldonado's motion to compel enforcement of a subpoena seeking production of grand jury minutes, Magistrate Judge Pitman stated that Maldonado "conceded at oral argument that Rehberg[ v. Paulk, 132 S. Ct. 1497 (2012)] bars his [§] 1983 claim based on a malicious prosecution theory and, thus, the only malicious prosecution theory that remains in the case is his state law claim."  Maldonado v. City of New York, No. 11 Civ. 3514 (PKC) (HBP), 2012 WL 2359836, at *4 (S.D.N.Y. June 21, 2012) (citations omitted).  The Court interprets this statement to mean simply that, after Rehburg, Maldonado's federal malicious prosecution claim provided no basis for his request for grand jury minutes.  Indeed, this is the import of the portion of the oral argument transcript cited by Judge Pitman (5/9/12 Tr. 8-9), and counsel for Maldonado later emphasized at oral argument that he was "not prepared to concede" that the federal "malicious prosecution claim falls away" (id. at 20:22-24).

Maldonado's prosecution terminated in his favor, as he was acquitted of all charges.  (Pl. 56.1

Response ¶ 85.)

### 1.  Initiation

Defendants argue that Maldonado cannot establish the "initiation" element.  Normally,

"[t]o initiate a prosecution, a defendant must do more than report the crime or give testimony.

He must 'play[ ] an active role in the prosecution, such as giving advice and encouragement or

importuning the authorities to act.'"  Manganiello, 612 F.3d at 163 (quoting Rohman, 215 F.3d at

217) (second alteration in original).  "In malicious prosecution cases against police officers,

plaintiffs have met this first element by showing that officers brought formal charges and had the

person arraigned, or filled out complaining and corroborating affidavits, or swore to and signed a

felony complaint."  Llerando-Phipps v. City of New York, 390 F. Supp. 2d 372, 382-83

(S.D.N.Y. 2005) (citations omitted).  In addition, a police officer "may be held liable for

malicious prosecution when [he] creates false information likely to influence a jury's decision

and forwards that information to prosecutors."  Cameron v. City of New York, 598 F.3d 50, 64

(2d Cir. 2010) (quoting Llerando-Phipps, 390 F. Supp. 2d at 383); see also Manganiello, 612

F.3d at 163; Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 130 (2d Cir. 1997).[6]

Contrary to Defendants' assertion, there is no requirement that an officer have "direct

contact with the prosecutor."  (Def. Reply 4.)  Phelps v. City of New York, No. 04 Civ. 8570

(DLC), 2006 WL 1749528, at *4 (S.D.N.Y. June 27, 2006).  Indeed, in Llerando-Phipps, 390 F.

Supp. 2d 372, this Court "held that a jury could find an officer liable despite the fact that he did

not bring the formal charges or fill out a complaining affidavit, [because] that officer reported the

---

[6] Thus, "the standard is different for law enforcement officers" than it is for "laypersons who are
defendants in cases of malicious prosecution."  Llerando-Phipps, 390 F. Supp. 2d at 382; see also
Cameron, 598 F.3d at 64.

evidence to the complaining officer." Bryant v. Crowe, 697 F. Supp. 2d 482, 492-93 (S.D.N.Y. 2010). Although only the complaining officer "signed the accusatory instrument," both officers satisfied the initiation element. Llerando-Phipps, 390 F. Supp. 2d at 383. Similarly, in Phelps, this Court held that because two police officers' "statements to [the arresting officer] caused [the plaintiff] to be arrested and ultimately charged[,] . . . their actions could be deemed to have initiated the prosecution." 2006 WL 1749528, at *4.

This case appears substantively indistinguishable from Llerando-Phipps and Phelps. Shortly after the arrest, Alvarez told Detective Gil, the assigned arresting officer, that Maldonado had given a glassine of heroin to Gonzalez. (Alvarez Dep. 82:9-83:14.) That night, Gil told the assistant district attorney what Alvarez had told him about Maldonado, and Maldonado was charged thereafter. (Gil Dep. 118:14-19:4.) Alvarez's actions thus set in motion the prosecution.

Defendants argue that the prosecutor's decision to bring charges is "an intervening cause that absolves the officer." (Def. Mem. 8.) However, as Defendants later acknowledge, (id.), "generally in malicious prosecution actions alleging that a police officer provided false information to a prosecutor, what prosecutors do subsequently has no effect whatsoever on the police officer's initial, potentially tortious behavior." Cameron, 598 F.3d at 63. A rational jury could credit Maldonado's version of events and, therefore, conclude that Maldonado was not selling heroin to Gonzalez. See Jeffreys v. City of New York, 426 F.3d 549, 553-55 (2d Cir. 2005) (holding that, unless one party's account is so "contradictory and incomplete" that no rational jury could credit it, "'[a]ssessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment'" (quoting Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996)). Given the discrepancies between Alvarez's and Maldonado's stories, the jury could find that Alvarez fabricated the story he

13

recounted to Gil about Maldonado's conduct, which was subsequently relayed to the prosecutor.[7] Consequently, there is a genuine dispute as to whether the "initiation" element of Maldonado's malicious prosecution claim is satisfied.

### 2. Probable Cause

The existence of probable cause to pursue a prosecution defeats a claim for malicious prosecution.  Stansbury v. Wertman, 721 F.3d 84, 94-95 (2d Cir. 2013).  In this context, probable cause has "been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty."  Id. at 95 (quoting Boyd v. City of New York, 336 F.3d 72, 76 (2d Cir. 2003)).  While probable cause to arrest for any crime will defeat a false arrest claim, the Court must "separately analyze the charges claimed to have been maliciously prosecuted."  Posr v. Doherty, 944 F.2d 91, 100 (2d Cir. 1991); see also Davis v. City of New York, 373 F. Supp. 2d 322, 334 (S.D.N.Y. 2005).

The probable cause inquiry on a malicious prosecution claim also "differs from the probable cause determination for a false arrest claim as information discovered after the arrest but before the initiation of criminal proceedings is relevant to whether there is probable cause to pursue the case."  Coakley v. 42nd Pct. Case 458, No. 08 Civ. 6206 (JSR), 2009 WL 3095529, at *6 (S.D.N.Y. Sept. 28, 2009).  Thus, "a grand jury indictment gives rise to a presumption that probable cause exists" for purposes of a malicious prosecution claim but not a false arrest claim. McClellan v. Smith, 439 F.3d 137, 145 (2d Cir. 2006).  "[I]f a grand jury passes a true bill, it may be inferred that there existed such facts and circumstances as would have led the defendants

---

[7] To the extent Defendants are arguing that Alvarez did not "initiate" the prosecution because other evidence, including information from Gonzalez, would have led the prosecutor to proceed even in the absence of Alvarez's report, their arguments are addressed in the Court's analysis of the "probable cause" element of malicious prosecution.

to believe that commencing or continuing the prosecution was reasonable."  Cox v. Cnty. of Suffolk, 827 F. Supp. 935, 938 (E.D.N.Y. 1993).

Here, Maldonado was indicted by a grand jury on the three charges for which he was prosecuted, including the criminal sale of a controlled substance.  (Pl. 56.1 Response ¶ 73.)  "The burden of rebutting the presumption of probable cause requires the plaintiff to establish what occurred in the grand jury, and to further establish that those circumstances warrant a finding of misconduct sufficient to erode the 'premise that the Grand Jury acts judicially[.]'"  Rothstein v. Carriere, 373 F.3d 275, 284 (2d Cir. 2004) (quoting Colon v. City of New York, 60 N.Y.2d 78, 82, 468 N.Y.S.2d 453, 455 N.E.2d 1248 (1983)) (alteration in original).  That is, the plaintiff "must establish that the indictment was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith."  McClellan, 439 F.3d at 145 (quoting Colon, 60 N.Y.2d at 83).  Even then, "the existence of probable cause independent of the allegedly falsified evidence is a defense" to a malicious prosecution claim.  Morse v. Spitzer, No. 07 Civ. 4793 (CBA) (RML), 2012 WL 3202963, at *5 (E.D.N.Y. Aug. 3, 2012).

Maldonado's attempt to rebut the presumption of probable cause by suggesting that Alvarez committed perjury in order to secure the indictment must fail.  "'[W]here a plaintiff's only evidence to rebut the presumption of the indictment is his version of events,' courts have found such allegations insufficient to rebut the presumption of probable cause."  Peterson v. Regina, 935 F. Supp. 2d 628, 643 (S.D.N.Y. 2013) (quoting Brandon v. City of New York, 705 F. Supp. 2d 261, 273 (S.D.N.Y. 2010)) (alteration in original).  Instead, the Second Circuit has "set forth a 'competing testimony plus' standard to assess whether a plaintiff sufficiently has rebutted the presumption of probable cause."  Brandon, 705 F. Supp. 2d at 273.  The "plus factor" consists of evidence corroborating the plaintiff's story and suggesting misconduct in the

procurement of the indictment.  See, e.g., McClellan, 439 F.3d at 146 (police officer provided

three versions of events and engaged in subsequent misconduct suggesting personal animus);

Boyd, 336 F.3d at 77 (booking sheet contradicted police officers' story); Brandon, 705 F. Supp.

2d at 274 (second police officer's version of events supported plaintiff).

      The only evidence that Maldonado identifies as corroborating his version of events is

Gil's inability to recall at his deposition the substance of his conversation with Alvarez regarding

Maldonado's arrest.  (Gil Dep. 115:11-20.)  Maldonado does not explain how this supports the

notion that Alvarez testified falsely to the grand jury.  If the implication is that Gil is covering

the tracks of his subordinate, Maldonado is engaging in pure speculation and has not made a

showing sufficient to avoid summary judgment.  See D'Amico v. City of New York, 132 F.3d

145, 149 (2d Cir. 1998).

      Even if Gil's memory has some bearing on Alvarez's veracity, there was an adequate

basis for probable cause independent of Alvarez's purportedly false testimony before the grand

jury.  Twenty glassines of heroin were recovered at the scene, (Def. Ex. E at NYC 349), and

Gonzalez testified at the grand jury that she had received the heroin from Maldonado, (Def. Ex.

N at P0039-40).[8]  "[I]nformation gleaned from informants can be sufficient to justify the

---

[8] At her deposition, Gonzalez claimed that she did not sell heroin to anyone on the day she and
Maldonado were arrested and that Maldonado never had a chance to sell the heroin before he
was arrested.  (Gonzalez Dep. 34:2-7.)  She confirmed, however, that she received heroin from
Maldonado, (id. 34:8-11), which mirrors what she told the grand jury.  The actions she attributed
to Maldonado are sufficient to support the criminal-sale charge in the grand jury indictment.  See
N.Y. Penal Law § 220.00 ("'Sell' means to sell, exchange, give or dispose of to another, or to
offer or agree to do the same." (emphasis added)).

Gonzalez further testified under oath at her plea colloquy that she and Maldonado had sold
heroin to another person on the day of their arrest.  (Def. Ex. O at NYC 380.)  Defendants claim
that this testimony also provides probable cause for Maldonado's prosecution.  However,
Gonzalez's plea colloquy occurred only on May 18, 2010—six months after Maldonado's
prosecution began.  (Id. at NYC 376.)

16

existence of probable cause . . . unless the circumstances raise doubt as to the person's veracity." Fabrikant v. French, 691 F.3d 193, 216 (2d Cir. 2012) (quoting Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006)).

"It has long been recognized that, where there is no dispute as to what facts were relied on to demonstrate probable cause, the existence of probable cause is a question of law for the court." Walczyk v. Rio, 496 F.3d 139, 157 (2d Cir. 2007). Given the available information, the Court finds that probable cause was not lacking for Maldonado's prosecution on any charge. As Maldonado's state and federal malicious prosecution claims[9] fail on the merits, the Court need not address Alvarez's invocation of absolute or qualified immunity.

### C. Fabrication of Evidence

Maldonado does not defend his fabrication-of-evidence claim against Defendants' motion. Nonetheless, Defendants have failed to show their entitlement to summary judgment on this claim. Notwithstanding Defendants' assertion to the contrary, Maldonado plainly alleges that Alvarez fabricated evidence, (Compl. ¶¶ 47, 62; Pl. Opp'n 12-13 ("Det. Alvarez did not have information sufficient to establish probable cause for th[e] charge [of criminal sale of a controlled substance] and then concocted a version of events that was and is false.")), and there exists a factual dispute as to this issue.

The Second Circuit recognizes the existence of a constitutional "right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an

---

[9] Although Defendants did not explicitly move for summary judgment on Maldonado's claim regarding the "lodging of false charges against him by police officers" (Compl. ¶¶ 47, 62), the Court notes that this claim does not appear to differ from Maldonado's malicious prosecution claim. See Lazaratos v. Ruiz, No. 00 Civ. 2221 (BSJ), 2003 WL 22283832, at *3 n.3 (S.D.N.Y. Sept. 30, 2003).

investigatory capacity." Zahrey v. Coffey, 221 F.3d 342, 344, 349 (2d Cir. 2000). "When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." Ricciuti, 124 F.3d at 130; see also Jovanovic v. City of New York, 486 F. App'x 149, 152 (2d Cir. 2012) ("A person suffers a constitutional violation if an (1) investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result.").

Although "[p]robable cause is not a defense" to a fabrication-of-evidence claim, the plaintiff must nevertheless "show causation—i.e., that the alleged fabrication of evidence led to a deprivation of his liberty." Jovanovic, 486 F. App'x at 152 (citing Ricciuti, 124 F.3d at 129-30). If "the intervening decision-maker would have precipitated the deprivation of liberty, even in the absence of the antecedent misconduct," the defendant "might avoid liability" because "'but for' causation could be claimed to be lacking." Zahrey, 221 F.3d at 352 n.8. In addition, "an action to vindicate a constitutional right . . . employs the tort principle of proximate causation." Higazy v. Templeton, 505 F.3d 161, 175 (2d Cir. 2007). Thus, defendants "may be liable for consequences caused by reasonably foreseeable intervening forces," such as when the defendant "deceived the subsequent decision maker" or "could 'reasonably foresee that his misconduct [would] contribute to an "independent" decision that results in a deprivation of liberty.'" Id. at 177 (quoting Zahrey, 221 F.3d at 352) (alteration in original).

Defendants' argument that Alvarez is entitled to absolute immunity for his trial testimony under Briscoe v. LaHue, 460 U.S. 325 (1983), is misguided. Maldonado does not claim that Alvarez's perjury at trial resulted in a deprivation of liberty. Instead, he claims that Alvarez

related a false narrative of the events preceding Maldonado's arrest to Gil, who then forwarded that information to the prosecutor.

Defendants further argue that because Maldonado was ultimately acquitted of all charges, he was not deprived of his right to a fair trial, and his fabrication-of-evidence claim must fail. This argument is also unpersuasive. Even though the alleged fabrication did not result in Maldonado's conviction, Alvarez could be liable for any unjustified deprivation of Maldonado's liberty before and during trial. See Zahrey, 221 F.3d at 348 (identifying the plaintiff's "liberty deprivation" as "the eight months he was confined, from his bail revocation (after his arrest) to his acquittal"); Ricciuti, 124 F.3d at 126, 130 (allowing a fabrication-of-evidence claim to proceed even though all charges against the plaintiffs had been dismissed); Jovanovic, 486 F. App'x at 152 (noting that "the allegedly fabricated admissions in Ricciuti caused the plaintiffs to be charged with a more serious crime and delayed their opportunity to be freed on bail"). Acquittal simply does not extinguish a plaintiff's claim that fabricated evidence deprived him of due process of law. See Abdul-Rahman v. City of New York, No. 10 Civ. 2778, 2012 WL 1077762, at *11 (E.D.N.Y. Mar. 30, 2012) (collecting cases).

Finally, Defendants contend that even if Alvarez fabricated evidence, Gonzalez's testimony in the grand jury and during her plea allocution supported the charges against Maldonado and, therefore, his pre-acquittal confinement cannot be attributed to Alvarez. "[F]oreseeability and causation," however, "are issues generally and more suitably entrusted to fact finder adjudication." Higazy, 505 F.3d at 175 (internal quotation marks omitted). Gonzalez's testimony provided evidence in support of Maldonado's prosecution for the sale of heroin and therefore could have helped to lead to his confinement. The Court cannot, however, conclude as a matter of law that Maldonado would have been confined for over 350 days, (Def.

19

Ex. Q at NYC 000802), in the absence of Alvarez's alleged fabrication of evidence, as it was Alvarez's report that led the prosecutor to charge Maldonado with the criminal sale of a controlled substance.  (Alvarez Dep. 82:9-83:14; Gil Dep. 115:8-14, 118:14-19:4.)  If Alvarez had in fact falsified that report, he would likely be responsible for any additional restraint on Maldonado's liberty that resulted from the sale charge, which was undoubtedly more serious than the possession charge.

Nor can the Court determine at this stage whether Alvarez is entitled to qualified immunity.  "In general, public officials are entitled to qualified immunity [to suit under § 1983] if (1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights."  Weyant, 101 F.3d at 857.  "It is firmly established that a constitutional right exists not to be deprived of liberty on the basis of false evidence fabricated by a government officer."  Zahrey, 221 F.3d at 355 (citing Ricciuti, 124 F.3d at 130).  The question is therefore whether it was "objectively reasonable" for Alvarez to believe that he did not violate that right.  Weyant, 101 F.3d at 857.  Such a belief would be reasonable only if Alvarez did not, in fact, fabricate evidence.  The reasonableness analysis is thus inextricably entwined with the merits, and the Court cannot resolve Alvarez's qualified immunity defense as a matter of law.  See id. at 858.  Maldonado's fabrication-of-evidence claim thus survives summary judgment.

**D.  Deprivation of Liberty Without Due Process**

Maldonado also does not oppose Defendants' motion for summary judgment on his due-process claim, the contours of which are unclear.  A number of Maldonado's other claims involve an alleged deprivation of liberty without due process of law, including his fabrication-of-evidence claim, Zahrey, 221 F.3d at 348, and his now-withdrawn claim for abuse of process,

Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir. 2001).  Presumably, by identifying a separate claim for "deprivation of liberty without due process of law" (Compl. ¶¶ 47, 62), Maldonado intended to describe a violation of procedural or substantive due process that differs from these constitutional torts.

In general, to determine whether a procedural due-process violation has occurred, "it is necessary to ask what process the State provided, and whether it was constitutionally adequate. This inquiry would examine the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law."  Zinermon v. Burch, 494 U.S. 113, 125-26 (1990).  "When the state conduct in question is random and unauthorized, the state satisfies procedural due process requirements so long as it provides meaningful post-deprivation remedy."  Rivera-Powell v. New York City Bd. of Elections, 470 F.3d 458, 465 (2d Cir. 2006).  "In contrast, when the deprivation is pursuant to an established state procedure, the state can predict when it will occur and is in the position to provide a pre-deprivation hearing."  Id.

The Court cannot discern what feasible pre-deprivation procedures could have prevented the injuries Maldonado claims to have suffered.  Alvarez's alleged decision to arrest Maldonado without probable cause and fabricate evidence against him is the archetype of "random and unauthorized intentional conduct" that the City cannot easily "anticipate and control in advance" with procedural safeguards beyond those already in place.  See Zinermon, 494 U.S. at 129-30 (quoting Hudson v. Palmer, 468 U.S. 517, 533 (1984)).  Nor could the City easily have prevented its employees from detaining Maldonado because they negligently confused him with a fugitive with the same name and date of birth.  See id. at 128-29 (discussing Parratt v. Taylor, 451 U.S. 527 (1981).  If Maldonado's allegations are true, the post-deprivation remedies for false arrest

and malicious prosecution under § 1983 and state common law provide ample relief.  Maldonado

has made no showing to the contrary.

      The Due Process Clause also contains "a substantive component that bars certain

arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to

implement them.'"  Id. at 125 (quoting Daniels v. Williams, 474 U.S. 327, 331 (1986)).  A

substantive due-process claim "allege[s] governmental conduct that 'is so egregious, so

outrageous, that it may fairly be said to shock the contemporary conscience.'"  Velez v. Levy,

401 F.3d 75, 93 (2d Cir. 2005) (quoting County of Sacramento v. Lewis, 523 U.S. 833, 847 n.8

(1998)).  However, even if Defendants' alleged conduct meets this threshold, "where a specific

constitutional provision prohibits government action, plaintiffs seeking redress for that

prohibited conduct in a § 1983 suit cannot make reference to the broad notion of substantive due

process."  Id. at 94.

      Here, Maldonado is able to seek redress for Alvarez's alleged misconduct via the Fourth

Amendment and the procedural component of the Fourteenth Amendment's Due Process Clause.

See Jaegly, 439 F.3d at 151 (false arrests violate the Fourth Amendment); Rohman, 215 F.3d at

215 (malicious prosecution violates the Fourth Amendment); Zahrey, 221 F.3d at 349 (the use of

fabricated evidence amounts to a deprivation of liberty without due process).  Furthermore, no

rational jury could find that the ostensibly negligent decision to detain Maldonado for a few days

after his acquittal is sufficiently outrageous to "shock the contemporary conscience."  Velez, 401

F.3d at 93 (quoting Lewis, 523 U.S. at 847 n.8).  Consequently, Maldonado has no substantive

due-process claim.

### E.  Violations of the New York State Constitution

Maldonado does not contest Defendants' claim that they are entitled to summary judgment on his New York constitutional claims.  "[T]here is no private right of action under the New York State Constitution for claims that are remediable under Section 1983 or other state laws."  <u>Batista v. City of New York</u>, No. 05 Civ. 8444 (KMK), 2007 WL 2822211, at *9 (S.D.N.Y. Sept. 25, 2007); <u>see also</u> <u>Hershey</u>, 938 F. Supp. 2d at 520.  Maldonado's state constitutional claims reiterate his § 1983 claims verbatim (<u>compare</u> Compl. ¶ 47 <u>with</u> ¶ 62), and nearly all of them have state common-law remedies as well.[10]  Summary judgment in favor of Defendants is therefore warranted.

### F.  Negligence

Summary judgment is also granted as to Maldonado's negligence claim.  "To establish a prima facie case of negligence, a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom."  <u>Solomon by Solomon v. City of New York</u>, 66 N.Y.2d 1026, 1027, 489 N.E.2d 1294 (1985) (citations omitted).  Maldonado's theory is that employees of the City of New York breached their duty to release him from custody immediately following his acquittal.  He alleges that he was returned to Rikers Island because these employees unreasonably failed to distinguish him from a fugitive from Georgia with the same name and date of birth.

"It is well settled that New York courts do not recognize claims for negligent or malicious investigation," <u>Johnson v. Kings Cnty. Dist. Attorney's Office</u>, 308 A.D.2d 278, 284,

---

[10]"False arrest and false imprisonment are, under New York law, 'two names for the same tort.'" <u>Dotson v. Farrugia</u>, No. 11 Civ. 1126 (PAE), 2012 WL 996997 at *7 (S.D.N.Y. Mar. 26, 2012) (quoting <u>Holland v. City of Poughkeepsie</u>, 90 A.D.3d 841, 844-45, 935 N.Y.S.2d 583 (2d Dep't 2011)), <u>reconsideration denied,</u> No. 11 Civ. 1126 (PAE), 2012 WL 1864278 (S.D.N.Y. May 22, 2012).  In addition, malicious prosecution is a tort under New York law.  <u>See</u> <u>Hershey</u>, 938 F. Supp. 2d at 517-18.

763 N.Y.S.2d 635, 640 (2nd Dep't 2003), or any "claim for negligence arising out of an arrest or prosecution," Hershey, 938 F. Supp. 2d at 520 (internal quotation marks omitted).  Thus, "[a] plaintiff seeking damages for an injury resulting from a wrongful arrest and detention may not recover under broad general principles of negligence . . . but must proceed by way of the traditional remedies of false arrest and imprisonment."  Johnson, 308 A.D.2d at 284-85 (internal quotation marks omitted) (second alteration in original).  This principle squarely applies in cases where the plaintiff was arrested and detained because authorities confused him with another individual who was the subject of a fugitive warrant.  See id.; Heath v. State, 229 A.D.2d 912, 645 N.Y.S.2d 366 (4th Dep't 1996).

Maldonado's negligence claim therefore fails as a matter of law, and the Court need not address the parties' arguments concerning whether City employees were, in fact, negligent.

### G.  Negligent Hiring, Screening, Retention, Supervision, and Training

Maldonado also does not contest Defendants' claim that they cannot be liable for negligent hiring, screening, retention, supervision, or training.  Under New York law, the plaintiff must show, among other things, that "the employer 'knew or should have known of the employee's propensity for the conduct which caused the injury' prior to the injury's occurrence."  Ehrens v. Lutheran Church, 385 F.3d 232, 235 (2d Cir. 2004) (quoting Kenneth R. v. Roman Catholic Diocese of Brooklyn, 229 A.D.2d 159, 654 N.Y.S.2d 791, 793 (2nd Dep't 1997)).  Defendants argue that the record discloses nothing that suggests that "Alvarez had a proclivity to falsely arrest or otherwise injure civilians or that the City knew or should have known of such a tendency."  (Def. Mem. 23.)  Having reviewed the record, the Court agrees and grants Defendants' motion for summary judgment on this claim.[11]

---

[11] In addition, like Maldonado's general negligence claim, these specific negligence claims are

24

**H. Respondeat Superior Liability and Governmental Immunity**

Lastly, Maldonado argues that the City is vicariously liable for Alvarez's violations of state law.  "Unlike cases brought under § 1983, municipalities may be liable for the common law torts, like false arrest and malicious prosecution, committed by their employees under the doctrine of <u>respondeat superior</u>."  <u>Biswas v. City of New York</u>, No. 12 Civ. 3607 (JGK), 2013 WL 5421678, at *27 (S.D.N.Y. Sept. 30, 2013) (quoting <u>L.B. v. Town of Chester</u>, 232 F. Supp. 2d 227, 239 (S.D.N.Y. 2002)).  As none of Maldonado's state-law claims against Alvarez survive, however, the City is not subject to <u>respondeat superior</u> liability, and the Court need not consider Defendants' argument that the City is immune under state law.

Furthermore, all negligence claims against the City have failed, and the surviving § 1983 fabrication-of-evidence claim does not apply to the City.[12]  Accordingly, only Alvarez remains a defendant in this action.

**CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment is granted with respect to Maldonado's (1) false arrest claim, (2) federal- and state-law malicious prosecution claims, (3) federal due-process claim, (4) state constitutional claims, (5) negligence claim, and (6) claim for negligent hiring, screening, retention, supervision, and training.  Defendants' motion is denied as to Maldonado's fabrication-of-evidence claim.

---

barred as a matter of public policy.  <u>See</u> <u>Jenkins v. City of New York</u>, No. 91 Civ. 3539 (RLC), 1992 WL 147647, at *8 (S.D.N.Y. June 15, 1992) (dismissing claims described as "negligent training, negligent supervision, negligent disciplining, negligent retention of employees, and negligent provision of incorrect information" as contrary to the public policy of New York, which prohibits claims for "negligent prosecution or investigation").

[12] Maldonado apparently does not seek to hold the City liable under § 1983.  Nor could he, as nothing in the record suggests that "constitutional deprivations [were] inflicted upon [Maldonado] pursuant to a governmental custom, policy, ordinance, regulation, or decision." <u>Batista v. Rodriguez</u>, 702 F.2d 393, 397 (2d Cir. 1983) (citing <u>Monell v. Department of Social Services of the City of New York</u>, 436 U.S. 658 (1978)).

The parties shall appear for a pretrial conference on March 6, 2014 at 11:00 a.m.

The Clerk of Court is respectfully requested to close the motion pending at docket

number 42 and to dismiss the City as a defendant in this matter.

SO ORDERED.

Dated:          February 26, 2014
                New York, New York

                                            Ronnie Abrams
                                            United States District Judge

26